## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRYSTAL WRIGHT, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.,*<br><br>Defendants. | Civ. Action No. 16-1556 (JEB) |

## DEFENDANTS' MOTION TO STAY PENDING LEGISLATION AND OPPOSITION TO
## PLAINTIFFS' APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION

### INTRODUCTION

Plaintiffs are District of Columbia residents who allege concerns for their personal safety and have elected to forgo possessing a firearm because of the "significant" ramifications of using deadly force. Compl. ¶¶ 43, 54, 60. As a result, plaintiffs contacted Taser International to procure a Taser. In each case, Taser International denied the request, "citing DC law." *Id.* ¶¶ 51, 57, 64. Shortly after being rebuffed, plaintiffs brought suit. They contend that the District's current prohibition on the possession of Tasers and stun guns, D.C. Code § 7-2501.01(7)(D), § 7-2502.01(a), is a violation of the Second Amendment and seek an injunction lifting the ban.

This Court should stay this action given the recent statement from the Chair of the Council of the District of Columbia that the Council intends to enact legislative amendments to lift the ban. The Court has discretion in such

circumstances not to waste judicial and party resources on an injunctive request that soon may be moot. Staying the action, moreover, will be consistent with the well-established principle that the Court, where reasonably possible, should avoid issuing constitutional rulings, especially in difficult and controversial areas.

The District opposes plaintiffs' motion for a preliminary injunction for these reasons, and also because plaintiffs fail to demonstrate an "emergency" or the need for immediate judicial intervention. At the very least, the Court would benefit from a developed record in deciding the novel questions of constitutional law plaintiffs now raise. Moreover, regardless of the Court's view on the merits, given the breadth of the relief plaintiffs seek—an injunction preventing enforcement of the law as to the public at large, not just plaintiffs—they cannot convincingly show that a preliminary injunction is in the public interest. To the contrary, a ruling in plaintiffs' favor would effectively wipe out what is now a total ban on possessing electronic weapons, leaving the District—and the public—with a regulatory void before the Council can take considered action. That is not an acceptable result.

Pursuant to LCvR 7(m), the undersigned discussed the motion to stay with opposing counsel, who declined to consent to the relief requested.

## STATEMENT OF FACTS

Shortly after Home Rule, in 1975 the District generally banned the possession of handguns and other "destructive devices," like explosives, tear gas,

and devices "intended to stun or disable a person by means of electric shock." D.C. Code §§ 7-2502.01(a), 7-2501.01(7) (2001).

The Supreme Court found this handgun ban unconstitutional in *District of Columbia v. Heller*, 554 U.S. 570 (2008) (*Heller I*), under the Second Amendment, which directs that "the right of the people to keep and bear Arms, shall not be infringed." The Court held that the Second Amendment codified a pre-existing, individual right and that, "whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 592, 635.

The District's elected leaders immediately amended its firearms laws to comply with the Constitution, establishing a system for registering handguns and instituting requirements for registrants. *See Heller v. District of Columbia*, 45 F. Supp. 3d 35, 38–39 (D.D.C. 2014), *affirmed in part and reversed in part*, 801 F.3d 264 (D.C. Cir. 2015) (*Heller III*).

Plaintiffs here filed suit on August 2, 2016, alleging that the District's ban on the possession of Tasers and stun guns violates the Second Amendment.[1] Compl. ¶ 66. On August 4, 2016, the District filed a partial consent motion for extension of time to respond to the Complaint to September 23, 2016, which was granted that

---

[1]     "Taser" is a trademark for a particular brand of device that can propel barbed electrodes several feet to deliver an electrical charge by wire. Stun guns, in contrast, are devices that must be held in direct contact to deliver a charge to the targeted person. *See Caetano v. Massachusetts*, 136 S. Ct. 1027, 1029 n.2 (Mar. 21, 2016) (Alito, J., concurring); *People v. Yanna*, 297 Mich. App. 137, 140 n.3 (2012).

same day. *See* Minute Order (Aug. 4, 2016). Plaintiffs filed an Application for Preliminary and Permanent Injunction on August 8, 2016.

Plaintiffs argue, among other things, that the Supreme Court recently "reiterated that the arms protected by the Second Amendment extend beyond firearms to weapons commonly used by law-abiding persons for self-defense." Doc. No. 9-1 at 1 (citing *Caetano*). Plaintiffs also request that the Court advance the trial on the merits with the application for preliminary relief and enter a permanent injunction. Doc. No. 9 at 1.

On being informed of this suit, the Council of the District of Columbia determined "to enact necessary legislative amendments" to the District's regulatory scheme. *See* Defendants' Exhibit No. (DEx.) 1 (Letter from Phil Mendelson to Karl Racine, Sep. 6, 2016).

## LEGAL STANDARD

"The usual role of a preliminary injunction is to preserve the status quo pending the outcome of litigation." *Cobell v. Norton*, 455 F.3d 301, 314 (D.C. Cir. 2006) (quoting *Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969)). A plaintiff seeking a preliminary injunction must establish that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). The last two factors "merge when the

Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Because injunctive relief is such an extraordinary remedy, a plaintiff seeking such

relief must prove all four prongs of the standard before relief can be granted. *Winter*

*v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008); *In re Navy Chaplaincy*, 738 F.3d

425, 428 (D.C. Cir 2013). "[A] preliminary injunction is an extraordinary and drastic

remedy, one that should not be granted unless the movant, *by a clear showing*,

carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)

(quoting 11 A.C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*

§ 2948 (2d ed. 1995)).

Even assuming plaintiffs may succeed on the merits, they fail to meet the

three remaining elements of the test for emergency injunctive relief. To qualify for

such extraordinary relief, a party must demonstrate an emergency, *i.e.*, that "[t]he

injury complained of is of such *imminence* that there is a 'clear and present' need for

equitable relief to prevent irreparable harm." *CFGC v. England*, 454 F.3d 290, 297

(D.C. Cir. 2006) (citation omitted).

A preliminary injunction serves "to preserve the relative positions of the

parties until a trial on the merits." *Id.* An injunction, as here, that "goes well beyond

simply maintaining the status quo … is particularly disfavored." *Stanley v. USC*, 13

F.3d 1313, 1320 (9th Cir. 1994). It is a "judicially inflicted injury," and many

circuits therefore make the movant's already high burden even "more stringent." *O*

*Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 978 (10th

Cir. 2004) (citing cases). *Cf., e.g., Sweis v. U.S. Foreign Claims Settlement Comm'n*, 950 F. Supp. 2d 44, 47 (D.D.C. 2013) (where relief requested would change rather than preserve the status quo, plaintiffs must show "extreme or very serious damage" or that they are "clearly entitled" to immediate relief).

## ARGUMENT

## I. THE COURT SHOULD STAY THE MATTER IN LIGHT OF IMPENDING LEGISLATION.

"Before reaching a constitutional question, a federal court should … consider whether there is a nonconstitutional ground for deciding the case, and if there is, dispose of the case on that ground." *City of Santa Monica v. FAA*, 631 F.3d 550, 553 (D.C. Cir. 2011) (quoting *Kalka v. Hawk*, 215 F.3d 90, 97 (D.C. Cir. 2000)).

This Court can avoid premature resolution of the constitutional questions here by staying the matter in light of impending legislative action. *See* DEx. 1. While it is true that courts "are not required to dismiss a live controversy as moot merely because it may become moot in the near future[,]" *Hunt v. Imperial Merchant Services, Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009), it is also true that "[i]f the case becomes moot, we would be wasting the time of the court and the parties." *Committee on the Judiciary v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (granting motion to stay).

"Prudential mootness arises out of a court's discretion to decline to grant equitable relief." *Gordon v. Holder*, 85 F. Supp. 3d 78, 81 (D.D.C. 2015) (citing *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019–20 (D.C. Cir. 1991)).

"[C]onsiderations favoring prudential mootness are heightened when withholding equitable relief would 'avoid the premature adjudication of constitutional issues.'" *Id.* at 82 (quoting *Penthouse Int'l*, 939 F.2d at 1020). Moreover, "a court may dismiss a case in equity despite concluding that the case is not in fact moot." *Kifafi v. Hilton Hotels Retirement Plan*, 701 F.3d 718, 724 n.3 (D.C. Cir. 2012) (citing *Penthouse Int'l*, 939 F.2d at 1019–20). Indeed, a court may dismiss a case as prudentially moot when it receives a commitment from the government to address the complained-of problem. *Finca Santa Elena, Inc. v. U.S. Army Corps of Engineers*, 62 F. Supp. 3d 1, 3 (D.D.C. 2014).[2] Here, however, the District is *not* now seeking dismissal of this matter, but simply requesting a stay to allow the legislative process to fix the disputed law.

---

[2]      *See also, e.g., Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012):

> Prudential mootness doctrine often makes its appearance in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief she seeks. Sometimes the plaintiff will seek an injunction against the enforcement of a regulation the relevant agency later offers to withdraw on its own. Sometimes the plaintiff will seek an order forcing a department to take an action that it eventually agrees to take voluntarily. However it comes about though, once the plaintiff has a remedial promise from a coordinate branch in hand, we will generally decline to add the promise of judicial remedy to the heap.

*Id.* at 1210.

Plaintiffs' request would require the Court to resolve a number of difficult constitutional questions, such as: (1) have plaintiffs met their burden to show that these devices are in common use, and thus qualify as "arms" subject to protection under the Second Amendment, *Heller I*, 554 U.S. at 625,? and (2) assuming the devices are in common use, have plaintiffs shown the devices cannot be banned, where self-defense sprays are allowed, D.C. Code § 7-2502.13, and where the D.C. Circuit has upheld a ban on assault weapons, a far more "common" weapon?[3]

The Court does not need to resolve these questions presently. In light of the forthcoming legislative action, which is likely to render plaintiffs' claims moot, this Court should stay the matter. Federal trial courts have broad discretion to stay proceedings before them. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). *See also, e.g., Ryan v. Gonzalez*, 133 S. Ct. 696, 708 (2013) (citing *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935) (court may stay a case "pending before it by virtue of its inherent power to control the progress of the cause so as to maintain the orderly processes of justice")). Courts may stay proceedings in the interests of justice and "in light of the particular circumstances of the case." *Doe v. Sipper*, 869 F. Supp. 2d

---

[3]     According to the Declaration of Mark Kroll (Doc. No. 9-5), Taser has sold approximately 275,000 devices "to the general public" since 1994. *Id.*, ¶ 5. Is that number sufficient, alone, to show "common use?" In *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*), the Circuit upheld a prohibition on the registration of assault weapons, despite a finding that "[a]pproximately 1.6 million AR–15s alone have been manufactured since 1986, and in 2007 this one popular model accounted for 5.5 percent of all firearms, and 14.4 percent of all rifles, produced in the U.S. for the domestic market." *Id.* at 1261.

113, 115 (D.D.C. 2012) (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)). *See also Nken v. Holder*, 556 U.S. 418, 419 (2009) (grant of a stay is a matter of "judicial discretion" that is "dependent upon the circumstances of the particular case"). *Cf. Mann v. Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012) (motion to stay may signal "that a defendant intends to seek alternative means of resolving a dispute, and avoid litigation in that jurisdiction") (quoting *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011)).

The Court should, in its "exercise of judgment … weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "[I]n cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 256.

This is just such a case: as the contours of the Second Amendment continue to be defined by appellate courts, plaintiffs should submit to a brief delay while the District's elected branches enact a regulatory regime consistent with the Constitution and the public interest; that regime may well moot plaintiffs' claims.

A stay here will clearly serve the interests of judicial economy and conserve the Court's and the parties' resources by delaying (and hopefully foreclosing) the need for discovery and full briefing on complex, important constitutional questions that need not be answered now. The D.C. Circuit has cautioned against resolving constitutional issues unnecessarily, noting that "even though Congress has provided

for interlocutory review of preliminary injunctions, premature resolution of difficult constitutional questions is undesirable." *Gordon v. Holder*, 721 F.3d 638, 644–45 (D.C. Cir. 2013).

A stay also would allow an orderly process to obtain the most considered legislation possible. Indeed, the Council of the District of Columbia is currently on recess until September 20, 2016. *See* http://dccouncil.us/calendar. The Council would not be able to take up any matter until then at the earliest. *See* DEx. 1. A brief stay to allow the Council to draft, consider, and enact appropriate legislation is clearly in the District's—and the public's—interest.[4] That is especially true given that the Council could constitutionally choose to limit the public carrying of stun guns, a point plaintiffs do not put at issue in the current suit. *See* Doc. No. 9-1 at 21 ("[T]his Court need not reach that question [*i.e.*, whether "the right to keep and bear electronic weapons extends outside the home[.]"]). *See also id.* at 1 ("What specific regulations the District might adopt must await the political and legislative process[.]").

Other courts have followed this judicious path in Second Amendment cases. In parallel litigation at about the same time that Mr. Heller sued the District again,

---

[4]      As discussed below, as they did in *Palmer*, the Council and Mayor are empowered to act quickly through emergency legislation when necessary. *See* D.C. Code § 1-204.12(a) ("If the Council determines, by a vote of two-thirds of the members, that emergency circumstances make it necessary that an act be passed after a single reading, or that it take effect immediately upon enactment, such act shall be effective for a period of not to exceed 90 days.").

another set of plaintiffs sued the District, alleging that the District's longstanding prohibition on carrying firearms in public violated the Second Amendment. *See Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014). The court ultimately enjoined the District's ban on the public carrying of firearms "unless and until such time as the District of Columbia adopts a licensing mechanism consistent with constitutional standards enabling people to exercise their Second Amendment right to bear arms." *Id.* at 183 (footnote omitted). Just days after the Court granted summary judgment to plaintiffs (which occurred when the Council was out for the Summer), it granted the District's partial unopposed motion for a 90-day stay "to provide the city council with an opportunity to enact appropriate legislation[.]" *Palmer*, Order (July 29, 2014) (Doc. No. 53) at 2. Thereafter, the Council (when it returned to session) swiftly enacted emergency legislation to permit the issuance of concealed-carry licenses, subsequently followed by permanent legislation. *See* License to Carry a Pistol Amendment Act of 2014, D.C. Law 20-279 (eff. Jun. 16, 2015), codified as amended at D.C. Code § 22-4506 *et seq.* (2015).[5]

---

[5]   The constitutionality of the District's concealed-carry regime was immediately challenged by two separate groups of plaintiffs; the judges in the two suits reached opposite conclusions on requests for emergency injunctive relief and, on appeal, the D.C. Circuit directed that oral argument on both appeals occur before the same panel on September 20, 2016. *See Wrenn v. District of Columbia*, No. 16-7025; *Grace v. District of Columbia*, No. 16-7067; *https://www.cadc.uscourts.gov/ internet/sixtyday.nsf/fullcalendar?OpenView&count=1000.*

Similarly, in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), the Seventh Circuit found that Illinois' prohibition on the public carrying of handguns violated the Second Amendment, but ordered its mandate "stayed for 180 days to allow the Illinois legislature to craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment as interpreted in this opinion, on the carrying of guns in public." *Id.* at 942. This Court can do similarly by allowing the Council to engage in the legislative process.

The District's ban on the possession of stun guns has been in place for decades, and some time is needed to fashion an appropriate regulatory regime, taking into account the current state of the law, public safety, and the manifold other interests at stake in such an important piece of legislation. *See* n.7, *infra. See also Ill. Ass'n of Firearms Retailers v. Chicago*, 961 F.Supp.2d 928, 947 (N.D. Ill. 2014) (finding that city's ban on virtually all sales and transfers of firearms violated the Second Amendment, but *sua sponte* staying judgment "at the very least until after the City has filed a motion for stay pending appeal … and after the Court rules on that stay motion").

Moreover, the fact that this particular legal issue has not been squarely addressed in this jurisdiction militates in favor of a stay. *See Klayman v. Obama*, 957 F.Supp.2d 1, 43–44 (D.D.C. 2013) (*sua sponte* staying order pending appeal, in light of, *inter alia*, "the novelty of the constitutional issues"); *Ctr. for Int'l Envtl.*

*Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22–23 (D.D.C. 2003) (stay warranted, *inter alia*, where "case presents an issue of first impression").

The District avers that a stay would be in the public interest, as it would allow the District's elected branches to follow the prescribed process for developing and enacting important legislation that complies with the Constitution.

## II. THE COURT SHOULD DECLINE TO ISSUE A PRELIMINARY INJUNCTION BECAUSE PLAINTIFFS HAVE NOT SHOWN IRREPARABLE INJURY.

This Court should deny the plaintiffs' request for a preliminary injunction because they have failed to show irreparable injury. A plaintiff seeking emergency injunctive relief must make a threshold showing of irreparable injury. *CityFed Fin. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Indeed, failure to show any irreparable harm is grounds to deny the requested relief, even if the other factors are in plaintiffs' favor. *Chaplaincy*, 454 F.3d at 297. The alleged injury "must be both certain and great; it must be actual and not theoretical." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (*per curiam*).

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Even assuming plaintiffs are likely to succeed on the merits, their inability to point to any imminent, non-

speculative harm from the ban on electronic arms independently justifies denial of the preliminary injunction.

Plaintiffs state that "the allegation of the [constitutional] violation, without more, satisfies the irreparable injury requirement." Doc. No. 9-1 at 31. This is incorrect, at least in the Second Amendment context. Plaintiffs argue that their right to keep and bear arms under the Second Amendment is like the rights protected by the First Amendment, and that, for proven violations, "irreparable harm is presumed." Doc. No. 9-1 at 31. But the rights protected under the First Amendment are inherently different from those protected under the Second Amendment. Rights such as free expression and free exercise of religion are so intrinsically valuable that "the irreparable nature of the harm may be presumed." *Chaplaincy*, 454 F.3d at 301 (free exercise of religion); *cf. Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (freedom from unreasonable seizure). The right to keep and bear arms, however, has no intrinsic value—it is not an end in itself. Rather, Second Amendment rights are instrumental. *McDonald*, 561 U.S. 742, 787 (2010). It is "the inherent right of self-defense" that is "central to the Second Amendment," *Heller I*, 554 U.S. at 628, and if no occasion arises where a weapon is needed for self-defense, its absence cannot cause harm. Just as it would be wrong to presume irreparable harm from a Sixth Amendment deprivation absent prosecution, *see McDonald*, 561 U.S. at 787, it is wrong to presume irreparable

harm from a temporary potential Second Amendment deprivation absent non-speculative physical threat.

Further, a presumption of intangible harm from plaintiffs' alleged deprivation would "merely focus[] greater attention on the three other [preliminary injunction] factors." *Chaplaincy*, 454 F.3d at 304. And the District will be irreparably harmed, and the public interest obstructed, if it cannot enforce this public safety law while litigation is pending. *Cf. Nken*, 556 U.S. at 435. This too distinguishes regulation of weapons from regulation of speech. First Amendment activity is difficult to regulate without even accidentally infringing on its core rights, and those core rights are not typically expressed through conduct that presents an inherent risk of danger to the general public. In contrast, even a temporary injunction barring the enforcement of a weapons regulation could have serious, unintended consequences.

Plaintiffs thus should be held to their normal burden to show an actual, not theoretical, risk of injury during the course of this litigation. They do not do so, but rather allege that they "risk physical injury because they are unable to exercise their Second Amendment right to self-defense using arms of their choice." Doc. No. 9-1. But plaintiffs have not identified any realistic, imminent threat of physical attack at home or elsewhere. Such generalized, speculative fears are insufficient to warrant emergency injunctive relief. *See Wrenn v. District of Columbia*, ___ F. Supp. 3d ___, 2016 WL 912174, n.14 (D.D.C. Mar. 7, 2016) ("Insofar as Plaintiffs

ever relied on the likelihood of being harmed as crime victims deprived of the putative ability to defend themselves … the Court concludes that such an injury is purely speculative and, therefore, fails to satisfy the standard for irreparable harm.").

Crucially, the ban at issue here does *not* leave plaintiffs or anyone else without means of self-defense. The District's prohibition on Tasers and stun guns is not the categorical ban struck down in *Heller*. The plaintiffs here retain access to self-defense sprays in public, D.C. Code § 7-2502.13, may apply to register firearms for use in the home, *id.*, § 7-2502.01, and may apply to carry handguns in public if they meet the "good reason" standard, D.C. Code § 22-4506(a) (2016): hence they are not left defenseless. Although they may lack access to their preferred weapon, they establish no "emergency" requiring immediate judicial intervention. *See Jackson v. City and County of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014) ("[F]irearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not.").

Plaintiffs have failed to establish irreparable harm, by failing to show that their injury is "both certain and great," "actual and not theoretical." *Chaplaincy*, 454 F.3d at 297.

## III.   THE BALANCE OF EQUITIES TIPS IN FAVOR OF THE DEFENDANTS

When considering the harm to the parties in determining the balance of equities, the Court must not only consider the parties to the case, but also the

general public. *See Majhor v. Kempthorne*, 518 F. Supp. 2d 221, 255 (D.D.C. 2007) (court must consider "the extent to which a preliminary injunction would 'substantially injure other parties'") (quoting *CityFed*, 58 F.3d at 746). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers).

The Court should not ignore the interests of the District because plaintiffs have invoked the Constitution. *See, e.g., Am. Freedom Defense Initiative v. WMATA*, 898 F. Supp. 2d 73, 84 (D.D.C. 2012) ("The Court must balance Plaintiffs' First Amendment right with [defendant's] concern for a possible threat to public safety.").

Issuing an injunction now would harm the District of Columbia and its citizens by injecting uncertainty into an important public-safety measure. Granting the relief requested by plaintiffs, which would apply to the public as a whole rather than just plaintiffs, "would throw the present system ... into disarray." *Emily's List v. FEC*, 362 F. Supp. 2d 43, 58–59 (D.D.C. 2005). Enjoining the District from enforcing its ban on electronic arms "would leave [the District] in the position of either allowing these areas to go unregulated until final resolution of this case, or hastily cobbling together an alternative [licensing regime]." *Id.* at 59. "The Court finds that either of these scenarios is potentially harmful to the public interest such that it renders the issuance of preliminary injunctive relief inappropriate." *Id.* The

Council, given its institutional advantages as a legislature, instead should be given the opportunity to consider what measures would be needed if the ban is lifted.

That is especially so because the Council has to consider the dangers that electronic arms pose. Even if Tasers and stun guns are generally less dangerous than traditional firearms, Doc. No. 9-1 at 13–15, plaintiffs too quickly dismiss the potential dangers of such weapons.

Amnesty International, in a 2012 study, found that at least 500 people in the United States had died since 2001 after being shocked by law enforcement officers with Tasers.[6] Indeed, although plaintiffs claim they are seeking to use electronic arms only in self-defense, their statement that "no basis exists to conclude that DC or the United States as a whole has any problem with the criminal misuse of Tasers or stun guns" Doc. No. 9-1 at 27, is plainly incorrect. *See, e.g.*, Martin Weil, *Robbery in NW reportedly involved a Taser*, Washington Post, Mar. 3, 2014, at B3; *Local Digest: Two arrested in stun gun robbery in D.C.*, Washington Post, Oct. 2, 2013 (describing a series of six stun gun attacks).[7]

---

[6]     *See, e.g.*, Ryan Jaslow, *Tasers may provoke deadly heart problems, study finds*, CBS News, May 2, 2012 (available online at *http://www.cbsnews.com/news/ tasers-may-provoke-deadly-heart-problems-study-finds*).

[7]     In 1992, the District enacted the Legalization of Self-Defense Sprays Amendment Act, Law No. 9-244 (eff. Mar. 17, 1993), *codified as amended at* D.C. Code § 7-2502.12 *et seq.* (2014 Supp.). That law requires registration of all such sprays. D.C. Code § 7-2502.14; *Jones v. United States*, 67 A.3d 547, 551 n.3 (D.C. 2013). Prior to the law's passage, the Council heard testimony from the Metropolitan Police Department concerning "the potential for serious harm to users

Plaintiffs erroneously argue that they seek only a "narrow" injunction to prohibit the District from preventing otherwise law-abiding citizens from possessing and using electronic arms for self-defense. Doc. No. 9-1 at 2. But the injunction plaintiffs seek, *see* Doc. No. 9-14, would invalidate the District's ban on possession of electronic weapons as to *everyone* (not just plaintiffs), without a regulatory scheme in place. In fact, while plaintiffs purport to concede that they "*are not* seeking an unfettered right to bear electronic arms free from any District regulation or oversight[,]" Doc. No. 9-1 at 23 (emphasis in original), the proposed injunction they proffer would have precisely that effect. Doc. No. 9-14 at 1. *Cf. Neb. Dep't of Health & Human Servs. v. U.S. Dep't of Health & Human Servs.*, 435 F.3d 326, (D.C. Cir. 2006) ("An injunction must be narrowly tailored to remedy the specific harm shown."). "[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

## IV.   ISSUING THE REQUESTED INJUNCTION IS NOT IN THE PUBLIC INTEREST.

Although for "several hundred years" courts sitting in equity have had the discretion to weigh the public interest in granting or denying injunctive relief, such

---

or innocent bystanders, the danger to children who get a hold of these sprays, and the potential use as an offensive weapon by criminals." Committee on the Judiciary, Council of the District of Columbia, Committee Report on Bill No. 9-857, at 4 (Nov. 25, 1992). Similar concerns may be raised in the forthcoming legislative action on stun guns.

courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 496 (2001) (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944), and *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Plaintiffs argue the "obvious," *i.e.*, that "enforcement of an unconstitutional law is always contrary to the public interest." Doc. No. 9-1 at 32 (quoting *Gordon*, 721 F.3d at 653). But that chestnut belies the fact that a final determination of the constitutionality of the electronic arms ban should only be made after full development of the record, including discovery, expert testimony, and full briefing. And that determination may well be unnecessary here if the Council enacts new legislation that eliminates plaintiffs' constitutional concern.

## V.   THE COURT SHOULD NOT CONSOLIDATE THE PRELIMINARY INJUNCTION PROCEEDINGS WITH THE MERITS.

This Court should not consider plaintiffs' request for a permanent injunction. Doc. No. 9-1 at 33. If plaintiffs want this Court to enter judgment now, before any development of the record, they should move for judgment on the pleadings under Fed. R. Civ. P. 12(c) or for summary judgment under Rule 56. This would give the District an opportunity to oppose the request without the time restrictions imposed by the procedures applicable to preliminary injunctive relief.

Plaintiffs' request also fails on the merits. Even assuming that there will *not* be subsequent legislation, the Court should have the benefit of a full record here. It makes no sense to undertake this significant inquiry on consideration of a

preliminary injunction, where the parties are constrained by strict briefing limitations. *See Gordon*, 721 F.3d at 644–45. It would make even less sense to do so while potentially mooting legislation is being crafted and considered.

"[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (unanimous) (citations omitted); *see also NRDC v. Peña*, 147 F.3d 1012, 1023 (D.C. Cir. 1998) (requiring the parties to "fully make their case at the preliminary injunction hearing" is "a practice at odds with both the Federal Rules of Civil Procedure and the provisional nature of preliminary injunctive relief") (citation omitted); *Gordon*, 721 F.3d at 644 ("We must refrain from resolving novel and difficult constitutional questions [on appeal from a preliminary injunction], leaving them to be settled at a later stage, with the benefit of further factual and legal development."). This is because the issues considered at a preliminary injunction hearing "are entirely different from the focus of a summary judgment adjudication" and because it is a "'risky approach' to assume that the often incomplete evidence adduced at a preliminary injunction hearing is sufficient to determine whether a claimant is entitled to judgment as a matter of law." *H & W Indus., Inc. v. Formosa Plastics Corp., USA*, 860 F.2d 172, 177 (5th Cir. 1988) (citing *Commc'ns. Maint., Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1205 (7th Cir. 1985)).

Similarly, "[w]hen a party moves for pre-discovery summary judgment, it 'bears the heavy burden of establishing that the merits of the case are so clear that

expedited action is justified.'" *Kemp v. Eiland*, No. 14-cv-1572 (TSC), 2015 WL 5826873, at *4 (D.D.C. Sept. 30, 2015) (quoting *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987)); *see also Thompson v. Fathom Creative, Inc.*, 626 F.Supp.2d 48, 53 (D.D.C. 2009) ("Pre-discovery summary judgment motions are usually premature and hence disfavored.") (quoting *Bourbeau v. Jonathan Woodner Co.*, 600 F. Supp. 2d 1, 3 (D.D.C. 2009)). *Cf. Tax Analysts v. IRS*, 214 F.3d 179, 186 (D.C. Cir. 2000) (pre-discovery judgment on the pleadings was "inappropriate" in light of lack of discovery); *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010) (denying in part motion for judgment on pleadings, allowing discovery to proceed; because a pre-discovery motion for judgment "would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation," a court must examine such motions "with the greatest of care") (citation omitted). Plaintiffs have not met their heavy burden.

Consolidating preliminary injunction proceedings with the trial on the merits is appropriate only when "the relevant facts are undisputed, exigent circumstances exist, and granting preliminary relief will effectively give a party all of the relief it would obtain after trial on the merits." *Morris v. District of Columbia*, 38 F. Supp. 3d 57, 63 (D.D.C. 2014)). But plaintiffs have not shown any "exigent" circumstances warranting consolidation—indeed, plaintiffs waited more than two months after the denial of their Taser purchases to sue. *See* Complaint ¶ 51. And the District's ban on

the possession of electronic arms has been in place for more than 40 years. There is simply no need to hurry.

## CONCLUSION

For the foregoing reasons, the District Defendants request that the Court issue a stay of the proceedings for 120 days and deny plaintiffs' application for preliminary and permanent injunction.

DATE: September 9, 2016.            Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Deputy Attorney General
Public Interest Division

/s/ Toni Michelle Jackson
TONI MICHELLE JACKSON (#453765)
Chief, Equity Section

/s/ Andrew J. Saindon
ANDREW J.SAINDON (#456987)
Senior Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Email: andy.saindon@dc.gov

/s/ Matthew R. Blecher
MATTHEW R. BLECHER (#1012957)
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Phone: (202) 442-9774
Email: matthew.blecher@dc.gov